**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAFNEY DAVIS**                                                    **CIVIL ACTION**

**VERSUS**                                                              **NO.  15-5981**

**SOCIAL SECURITY ADMINISTRATION**                    **SECTION: "G" (4)**

## REPORT AND RECOMMENDATION

**I.      Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).  The Commissioner denied Dafney Davis claim for Disability Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c), .  The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(B), for the submission of Proposed Findings and Recommendations.

**II.     Factual Summary**

On November 18, 2015, the claimant, Dafney Davis ("Davis"), filed this appeal of the denial of Disability Insurance Benefits. R. Doc. 16. Davis is a sixty-two-year-old female with a ninth grade education and past work as a librarian helper and warehouse worker. R. Doc. 18, p. 3. She complains that her disability began on October 24, 2012 because of the traumatic grief she experiences as a result of the violent death of her grandson whom she adopted and maintained sole guardianship.

Davis states that she protectively filed for Disability Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income on November 30, 2012. R. Doc. 18, p. 1. Her application was denied on August 13, 2013. R. Doc. 14-4, Tr. 137-48. Davis then filed a request for a hearing, which took place on March 14, 2014 before Administrative Law Judge Joan Deans ("ALJ"). R. Doc.

14-2, Tr. 46-70. Thereafter, the ALJ issued a decision finding Davis was not disabled. *Id.* at Tr. 24-41. That decision was affirmed by the Appeals Council. *Id.* at Tr. 1-6.

Davis' husband died at the age of 50 and she met the requirement for Disabled Widow Benefits pursuant to section 202(e).  R. Doc. 14-2, p. 31. After her grandson's violent death over a cell phone, she no longer has any income because the only income she had was through some form of Social Security Benefits.  She therefore contends that she is either entitled to (1) Disabled Widow Benefits (2) Supplemental Security Income Benefits or (3) Disability Insurance Benefits which were denied on administrative review. R. Doc. 16.

In particular, Davis contends that the ALJ erred when she: (1) held that her recurrent major depressive disorder and adjustment disorders were not severe; (2) failed to comport with the legal standards found in Listing Level 12.04; (3) failed to complete the functional capacity assessment such that it is not supported by substantial evidence; and (4) failed to point to other work in significant numbers in the national economy given the residual functional capacity. R. Doc. 18, p. 1. In response, the Commissioner argues that the ALJ properly determined that Davis's mental impairments were non severe. R. Doc. 19, p. 6.

**III.    <u>Standard of Review</u>**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder.  The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary.  *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

2

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work

experience, and residual functional capacity must be considered to determine whether he can do other work.  *See Villa v. Sullivan*, 895  F.2d 1019, 1022 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five.  *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.** **Whether the ALJ's decision regarding Davis' credibility regarding the severity of her depression  and adjustment disorders is based upon substantial evidence?**

 Davis contends that the ALJ erred in finding that her Major Depression Disorder and Adjustment Disorder with Mixed emotional features were not severe. R. Doc. 18, p. 9. In support of her claim, Davis contends that the onset date of her emotional turmoil manifested with the violent murder of her adopted grandson. *Id.* She contends that she experienced intense, persistent and functionally limiting effects which is evidenced by weekly grief counseling that began on October 24, 2012. *Id.* Davis contends that as a result of her loss she experiences crying spells, fatigue, hopelessness, racing thoughts, anhedonia and decreased energy and is unable to function cognitively such that her mental disorders are severe. *Id.*

The Commissioner contends, however, that substantial evidence supports the ALJ's determination at step two such that Davis' mental impairments are not severe. R. Doc. 19, p. 7. The Commissioner points out that the ALJ considered Davis' testimony, written statements, medical evidence of her mental functioning as well as the medical opinion of record. *Id.*. at p. 7-8. The Commissioner further contends that the ALJ explained how she determined that the plaintiff had no more than mild limitations in mental functioning.  As a result, according to the Commissioner the finding that Davis did not have a mental impairment is based on substantial evidence should be affirmed.

4

The evaluation of a disability on the basis of mental disorders requires the documentation of a medically determinable impairment, as well as consideration of the degree of limitation such impairment may impose on the individual's ability to work, and whether these limitations are expected to last for a continuous period of at least twelve months. *Mosby v. Apfel*, No. 99-1031, 2000 WL 174897, at *3 (E.D. La. Feb. 14, 2000); *Richard v. Secretary of HHS,* 894 F. Supp. 1045, 1052 (E.D. Tex. 1995). "Disability" is a legal status that is determined by the ALJ after evaluating expert medical and vocational findings; however, the ALJ's determination must be supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The inquiry necessarily becomes whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. *See Id.*

In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional restrictions are present ("paragraph B" criteria). *See* 20 C.F.R. § 404.1520a. The claimant's mental impairment must satisfy both paragraph A and paragraph B criteria to meet the listings. A claimant who satisfies the diagnostic criteria contained in the listing 12.04 (B) for "Affective Disorders" must be found disabled, if his condition results in two or more of the following functional limitations:

1. Marked restriction in activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

5

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). The purpose of the functional criteria contained in paragraph B is to measure the severity of the claimant's impairment. *Id.* at § 12.00(C). These criteria "represent functional areas deemed essential to work." *Id.* at § 12.00(A). For this reason, a claimant whose mental impairment results in the requisite functional restrictions meets the listing and, accordingly, "is presumed to be unable to work." *Richard*, 894 F. Supp. at 1053.

As defined at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4):

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode
>
> The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4) (emphasis added).

Even if a claimant's mental impairment does not meet the criteria specified in the listings, he must be found disabled if his condition "is equal to" a listed impairment. *See* 20 C.F.R. § 404.1520(d). In evaluating a claimant with more than one impairment, the Commissioner must consider "whether the combination of ... impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a); *see also Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir.1987). The claimant's illnesses "must be considered in combination and must not be fragmented in evaluating their effects." *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir.1985) (quoting *Dressel v. Califano*, 558 F.2d 504, 508 (8th

6

Cir.1977)). In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether his "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3).

In this case, the ALJ determined that Davis had an affective disorder, bereavement disorder, anxiety disorder, and knee pain. R. Doc. 14-2, Tr. 30. She further found that neither Davis' impairments nor the combination of impairments have significantly limited her ability to perform basic work-related activities for twelve months. *Id.* In the ALJ's view, Davis had no more than mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence or pace and no episodes of decompensation each of extended duration. *Id.* at Tr. 34.

The ALJ noted Davis' testimony that she has no problems attending to her personal care, that she needed no reminders to take care of her personal needs, grooming or when to take medication. *Id.* The ALJ further noted Davis' testimony that she is able to prepare meals daily, perform housework, go out alone, and walk outside, use public transportation, shop in stores for food, household items and handle money. *Id.* The ALJ further noted her testimony that she spends time with family members, able to pay attention and follow written and spoken instructions.  She also noted the fact that Davis is able to get along with authority figures and she has never been fired from a job because of not getting along with people. *Id.* She also noted Davis' report to Dr. Fowler that she enjoyed group therapy but preferred isolation since her grandson's death and that she lived alone and spent her days taking a walk, reading a book or sitting at home. *Id.*

While the ALJ noted Dr. Fowler's finding that Davis had limited persistence, a slowed pace, diminished social interactions and medication, initiative and energy she also noted the treatment records indicated improvement in appetite, that she had decreased panic attacks and improved outlook

7

and sleep. *Id.* The ALJ noted that according to the nurse practitioner who was on call on July 17, 2013 there was  evidence of significant improvement because it  showed good eye contact, an appropriate affect, a cooperative attitude, a logical thought process good concentration, intact memory and good intellect, insight and judgment. *Id.* The ALJ also noted that Davis reported a depressed mood but it was attributed to medication noncompliance and there were no episodes of decompensation. *Id.*

The Fifth Circuit has held that an ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record.  *Foster v. Astrue*, 277 F. App'x 462, 465 (5th Cir. 2008) (citing *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985)). Credibility determinations are generally entitled to great deference.  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 200); *see Gonzales v. Astrue*, 231 F. App'x 322, 325 (5th Cir. 2007) (holding that the ALJ's adverse credibility determination with respect to a claimant seeking social security disability benefits was supported by inconsistencies in claimant's testimony and between claimant's testimony and documentary evidence).

The medical evidence does not support Davis' contention that she met the listing level requirement based on her testimony.   The record shows that Davis started taking mediation on February 20, 2013. R. Doc. 14-7, Tr. 298.  At that time she reported that she attended group sessions which helped and supported her. *Id.* at 299. She, according to the record, reportedly liked being alone but that when she is around people she can carry a conversation. *Id.* She indicated that while she has experienced a decrease in appetite she could take care of herself. *Id.* The psychologist noted that her thoughts were coherent and goal directed. *Id.*

The medical evidence shows that her ability to function improved with medication. The record shows that she has not been hospitalized for psychiatric conditions.  R. Doc. 14-7, Tr. 393. Two months after her grandson (adopted son's) death, she reported decreased sleep irritability, crying

spells and a sense of hopelessness. *Id.* at Tr.  398.  Over a year later the records show that her affect was much lighter and brighter. *Id.* at Tr. 338.  She reported that she was in group sessions. *Id.*  The records also show that Davis participated appropriately in group sessions R. Doc. 14-7, Tr. 428-433, 436-438, 441.

On one occasion Davis cried during group and she periodically skipped some sessions. *Id.* at Tr. 441, 459, 463.   While Davis contends that she is unable to work because she experiences crying spells, she is overwhelmed and hopeless with decreased energy, the evidence of record indicates that both her group sessions and medications improve her ability to function.  R. Doc. 14-3, Tr. 113; R. Doc. 14-7, Tr. 317-441. The ALJ's decision that Davis' mental impairments were not severe is based on substantial evidence.

**V.      Whether the Residual Functional Capacity Assessment is based on Substantial Evidence.**

Davis contends that the ALJ's analysis of her Residual Functional Capacity ("RFC") lacks full discussion of all credible symptoms and the extent to which those symptoms are consistent with all objective medical evidence. R. Doc. 18, p. 12. She contends that the RFC is incomplete and therefore not supported by substantial evidence. *Id.* Davis further contends that because  she testified to episodes of daily crying, isolation and anhedonia, there is evidence of deficiencies, in concentration, persistence, in pace, along with the inability to interact with the general public and workplace stressors. *Id.* at p. 13. As a result of these breaks in her ability to function she contends that the ALJ's decision is not based upon substantial evidence.

The Commissioner does not directly address this issue. The record indicates that no Residual Functional Capacity Assessment was associated with the claim.  R. Doc. 14-3, Tr. 135.

In determining the impact of a mental disorder on an individual's capacities, essentially the same impairment-related medical and nonmedical information is considered to determine whether the

mental disorder meets listing severity as is considered to determine whether the mental impairment is of lesser severity, yet diminishes the individual's RFC. Social Security Ruling 85-16, 1985 WL 56855 at *1. "For impairments of listing severity, inability to perform substantial gainful activity (SGA) is presumed from prescribed findings." *Id*.

However, with mental impairments of lesser severity, such inability must be demonstrated through a detailed evaluation of the individual's capacity to perform and sustain mental activities which are critical to work performance. *Id*. Conclusions of ability to engage in SGA are not to be inferred simply because the mental disorder is not of listing severity. *Id*.

It is the responsibility of the ALJ or the Appeals Council to identify the pertinent evidence from medical and nonmedical reports and to make findings as to the individual's ability to perform work-related activities. *Id*. The determination of impairment severity and the resulting RFC constitute the medical evaluation of the mental disorder. *Id*.

The ALJ found that Davis' affective disorder, bereavement, anxiety disorder and knee pain had no more than a minimal effect on her and would not be expected to interfere with her ability to perform work-related activities and therefore are non-severe.  R. Doc. 14-2, Tr. 34-35. In reaching this conclusion, the ALJ conducted an exhaustive analysis of her medical records and treatment as required by the regulations.  She noted that during the year she sought treatment and that her symptoms improved. *Id*. at 34.

Regarding her knee, the ALJ noted that Davis testified that she walked 45 minutes to the hearing without taking a break and did not complain of knee pain during the hearing. *Id*. at 33. She therefore found that Davis' left knee impairment was a slight abnormality with minimal effect. *Id*.

Regarding her mental impairments, the ALJ observed that a clinical social worker diagnosed Davis with major depression disorder, and a nurse practitioner diagnosed her with panic disorder

without agoraphobia. The ALJ further noted that during her testimony Davis stated that she had no problems attending to her personal care, that she did not need any reminder to take care of her personal needs or medication and that she prepares her own meals daily, performs housework uses public transportation, shop in stores and handles money. *Id.* at Tr. 34.

Davis contends that her testimony is consistent with the Dr. Fowler's consultative examination of February 22, 2013, which noted that she had a depressive reaction to her grandson's death, limited persistence and slower pace with diminished social interaction and motivation.  *See* Rec. Doc. 14-7, Tr. 300. She contends that her daily episodes of crying, isolation and anhedonia diminished concentration results in breaks rendering her employment unsustainable. R. Doc. 18, p. 13.

The record shows that the ALJ considered Dr. Fowler's report where she advised him that she attended regular classes through ninth grade with few friends, was able to get along with people and enjoyed group therapy but preferred isolation. R. Doc. 14-2. p. 33. However the ALJ properly considered the totality of the medicals which showed that by September 2013, Davis' reported that her symptoms had improved.   The ALJ further correctly concluded that Dr. Fowler's opinions were inconsistent with Davis' treatment records. *Id.* at Tr. 35. The Court therefore finds that the ALJ's RFC finding is based upon substantial evidence.

A claimant may demonstrate that his or her impairment is of sufficient severity to qualify in the event that the claimant suffers from a less severe impairment, where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy. . . ." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (citing 42 U.S.C. § 423(d)(2)(A)). "In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4)." *Ludvico v. Astrue*, No. 08-332, 2008 WL 5134938 at *5 (W.D. Penn. Dec. 5, 2008)

(citing *Stunkard v. Sec'y of Human Servs.*, 841 F.2d 57, 59 (3rd Cir. 1988)). After making that showing, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas v. Bown*, 823 F.2d 775, 777 (3d Cir. 1987).

**VI.**    **Whether the ALJ's opinion requires demonstrable evidence of other work in significant numbers in the national economy.**

Finally, Davis contends that the ALJ failed to present demonstrable evidence of other work in significant numbers in the national economy given her residual functional capacity. R. Doc. 18, p. 14. The Commissioner however did not address this issue because the ALJ found that she was not disable at Step 2.

At the second step, the ALJ is required to consider the medical severity of the impairment(s). A non-severe impairment under the Social Security regulations is one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Giles v. Astrue*, 433 F. App'x 241, 245–46 (5th Cir. 2011)   If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).  The regulations further provide that the ALJ will not consider the claimants age, education, and work experience. 20 C.F.R. § 404.1520(c).

The record shows that the ALJ complied with the regulations and determined at Step 2 that Davis' physical and mental impairments neither singly nor in combination significantly limited her ability to perform basic work activities. R. Doc. 14-2, Tr. 35. In reaching this conclusion the ALJ

relied upon the state agency psychologist opinion of September 3, 2013, which indicated that her affective and anxiety disorders imposed mild restrictions on her activities of daily living and mild difficulties in her ability to maintain social functioning with mild difficulties of concentration, persistence or pace and no episodes of decompensation for an extended duration. *Id. See also* 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step."). *Hensley v. Astrue*, No. CA 1:09-1282-TLW-SVH, 2010 WL 3724742, at *9 (D.S.C. Aug. 12, 2010), <u>report and recommendation adopted,</u> No. CIVA 1:09-1282TLWSVH, 2010 WL 3724678 (D.S.C. Sept. 16, 2010); *Smith v. Astrue,* 278 F. App'x. 395, 398 (5th Cir. 2008) (unpublished) (quoting *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988)) ("A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis."); *Alexander v. Astrue*, 412 F. App'x 719, 721 (5th Cir. 2011).

The Court therefore finds that the ALJ properly determined that Davis' was not disabled before Step 5 and therefore she was not required to considered the number of jobs available in the national economy. Therefore, her decision was based on substantial evidence.

## VII.   <u>Recommendation</u>

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Dafney Davis' claim for Disability Insurance Benefits, Disabled Widow's Benefits and Supplemental Security Income Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 21st day of December 2016

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

14