## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAFNEY DAVIS**                                          **CIVIL ACTION**

**VERSUS**                                                **NO.  15-5981**

**SOCIAL SECURITY ADMINISTRATION**                        **SECTION: "G"(4)**

## <u>ORDER AND REASONS</u>

Before the Court are Plaintiff Dafney Davis's ("Plaintiff") objections[1] to the December 21, 2016 Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her claim for disability insurance benefits ("DBI"), disabled widow's benefits ("DWB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").[3] The Magistrate Judge recommended that the Administrative Law Judge's ("ALJ") decision denying Plaintiff's application for benefits be affirmed.[4] Having considered Plaintiff's objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons the Court will overrule Plaintiff's objections and adopt the Magistrate Judge's Report and Recommendation.

---

[1] Rec. Doc. 25.

[2] Rec. Doc. 20.

[3] Rec. Docs. 1, 16.

[4] Rec. Doc. 14 at 13.

# I. Background

## A.    *Procedural History*

On November 30, 2012, Plaintiff filed an application for DBI, DWB, and SSI, alleging that her disability began on October 4, 2012, due to depression, anxiety, stress, and grief.[5] After her claims were denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on March 14, 2014.[6] Plaintiff and a vocational expert participated in the hearing.[7]

On May 8, 2014, the ALJ issued a decision denying Plaintiff's application for benefits.[8] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[9] At

---

[5] Adm. Rec. at 201–20.

[6] *Id*. at 46–70.

[7] *Id*.

[8] *Id*. at 24–41.

[9] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's

step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 4, 2012, the alleged onset date.[10] At step two, the ALJ concluded that Plaintiff has the following medically determinable impairments: "affective disorder, bereavement disorder, anxiety disorder, and knee pain."[11] However, the ALJ held that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.[12] Therefore, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments.[13] Accordingly, the ALJ determined that Plaintiff was not under a disability from October 4, 2012, through the date of the decision.[14]

Plaintiff requested review by the Appeals Council.[15] The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on September 24, 2015.[16] On November 18, 2015, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act,[17] and on May 9, 2015, with leave of Court, Plaintiff filed an amended complaint.[18] This matter was referred to a United States Magistrate

---

vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[10] Adm. Rec. at 30.

[11] *Id*.

[12] *Id*.

[13] *Id*.

[14] *Id*. at 36.

[15] *Id*. at 17–23.

[16] *Id*. at 1–6.

[17] Rec. Doc. 2.

[18] Rec. Doc. 16.

Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On May 5, 2016, the Commissioner answered the complaint.[19]

On June 14, 2016, Plaintiff filed a brief arguing that the ALJ erred when she: (1) held that Plaintiff's recurrent major depressive disorder and adjustment disorder were not severe; (2) failed to comport with the legal standards found in Listing 12.04; (3) failed to complete the functional capacity assessment such that it is not supported by substantial evidence; and (4) failed to point to other work in significant numbers in the national economy given Plaintiff's residual functional capacity.[20] On July 29, 2016, the Commissioner filed a reply brief arguing that substantial evidence supports the ALJ's determination that Plaintiff's conditions were not severe.[21]

**B.      *Report and Recommendation Findings***

The Magistrate Judge issued a Report and Recommendation on December 21, 2016.[22] First, the Magistrate Judge addressed Plaintiff's argument that the ALJ erred in finding that her major depressive disorder and adjustment disorder were not severe.[23] In support of her claim, Plaintiff argued that the onset date of her conditions began with the violent murder of her grandson whom she had adopted.[24] The Magistrate Judge determined that the medical evidence did not support

---

[19] Rec. Doc. 13.

[20] Rec. Doc. 18.

[21] Rec. Doc. 19.

[22] Rec. Doc. 20.

[23] *Id*. at 4.

[24] *Id*.

Plaintiff's contention that she met the listing level for a severe mental impairment.[25] The Magistrate Judge found that the medical evidence showed that Plaintiff's ability to function improved with medication, and that she had not been hospitalized for any psychiatric conditions.[26] The Magistrate Judge noted that two months after Plaintiff's adopted son's death, she reported decreased sleep, irritability, crying spells, and a sense of hopelessness.[27] However, a year later the medical records showed that Plaintiff's affect was much lighter and brighter.[28] Accordingly, the Magistrate Judge determined that the ALJ's decision that Plaintiff's mental impairments were not severe was based on substantial evidence.[29]

Second, the Magistrate Judge addressed Plaintiff's contention that the residual functional capacity ("RFC") assessment was incomplete and therefore not based on substantial evidence.[30] The Magistrate Judge noted that no RFC was associated with Plaintiff's claim.[31] Plaintiff pointed to her February 22, 2013 consultative examination by Dr. Fowler, where Dr. Fowler noted that Plaintiff had a depressive reaction to her grandson's death, limited persistence, and slower pace with diminished social interaction and motivation.[32] Plaintiff argued that her daily episodes of crying, isolation, and anhedonia diminished her concentration, resulting in breaks rendering her

---

[25] *Id.* at 8.

[26] *Id.*

[27] *Id.* at 8–9 (citing Adm. Rec. at 398).

[28] *Id.* at 9 (citing Adm. Rec. at 338).

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 11 (citing Adm. Rec. at 300).

employment unsustainable.[33] The Magistrate Judge concluded that the ALJ properly considered the totality of the medicals, which showed that by September 2013, Plaintiff reported that her symptoms had improved, and that the ALJ correctly concluded that Dr. Fowler's opinions were inconsistent with Plaintiff's treatment records.[34] Accordingly, the Magistrate Judge found that the ALJ's RFC determination was based upon substantial evidence.[35]

Finally, the Magistrate Judge addressed Plaintiff's argument that the ALJ failed to present demonstrable evidence of other work in significant numbers in the national economy given Plaintiff's RFC.[36] The Magistrate Judge noted that the ALJ determined at Step 2 that Plaintiff's physical and mental impairments neither singly nor in combination significantly limited her ability to perform basic work activities.[37] Because the ALJ properly determined that Plaintiff was not disabled at Step 2, the Magistrate Judgr concluded that the ALJ was not required to reach Step 5 and consider the number of jobs available in the national economy.[38]

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 12.

[37] *Id.*

[38] *Id.* at 13.

## II. Objections

### A.   *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on January 13, 2017.[39] Plaintiff contends that the Magistrate Judge erred in affirming the ALJ's finding that her major depressive disorder, panic disorder, and adjustment disorder were not severe impairments.[40] She contends that her "mental impairments would impose more than minimal limitation on her ability to perform even basic work-related activities on a regular and continuous basis."[41] In addition, Plaintiff submits that her ongoing treatment sufficiently demonstrated that her condition could be expected to last at least 12 months.[42] Accordingly, Plaintiff contends that her mental conditions were severe.[43]

Plaintiff notes that she reported crying spells, decreased sleep, fatigue, hopelessness, rapid mood swings, panic attacks, racing thoughts, anhedonia, isolating behavior, decreased appetite, and decreased energy following the death of her adopted son.[44] Based on these symptoms, Plaintiff asserts that it would be reasonable to conclude that she suffers intense, persistent, and functionally limiting effects, including difficulties concentrating and participating in attention demanding low-

---

[39] Rec. Doc.  25. On January 3, 2017, the Court granted Plaintiff an additional 10 days to file her objections. Rec. Doc. 23.

[40] Rec. Doc. 25-1 at 6.

[41] *Id*. at 7.

[42] *Id*.

[43] *Id*.

[44] *Id*. (citing Adm. Rec. at 296–99, 312, 377, 393, 398, 402).

stress tasks.[45] Plaintiff contends that this conclusion is supported by the opinion of the consultative

examiner, Dr. Fowler.[46] Therefore, Plaintiff submits that the combination of her impairments

would impose more than a minimal impact on her ability to engage in, and maintain, routine

competitive employment.[47]

Plaintiff acknowledges that she reported some improvement in her mental conditions with

treatment.[48] However, she asserts that the record reflects numerous instances where she reported

ongoing symptoms and limitations as a result of her impairments.[49] Plaintiff contends that although

she reported some improvement in her symptoms, "it does not mean that her conditions did not

have more than a minimal effect on her ability to perform work-related activities."[50] Plaintiff notes

that she reported that she only feels comfortable while she is in group therapy, and otherwise she

does not want to be around people or leave the house.[51] Moreover, Plaintiff points to Dr. Fowler's

opinion that she had limited persistence and slowed pace, endorsed diminished social interactions

and motivation, and appeared to be more comfortable alone.[52] Based on these factors, Plaintiff

notes that Dr. Fowler concluded that she would have difficulty functioning for extended periods

---

[45] *Id.*

[46] *Id.* (citing Adm. Rec. at 300).

[47] *Id.*

[48] *Id.* at 8.

[49] *Id.* (citing Adm. Rec. at 312, 330, 342, 349, 353, 356, 358, 368, 370, 377, 393, 459).

[50] *Id.*

[51] *Id.* (citing Adm. Rec. at 312, 330, 349, 351, 353, 368, 429, 438, 441).

[52] *Id.* (citing Adm. Rec. at 300).

of time.[53] For these reasons, Plaintiff asserts that the evidence sufficiently demonstrates that her mental impairments would have a more than minimal impact on her ability to perform work-related activities, and therefore constitute severe impairments.[54] Accordingly, Plaintiff contends that the Magistrate Judge's finding that the ALJ's determination at Step 2 was supported by substantial evidence is without merit.[55]

## B.    *The Commissioner's Response*

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing posted on January 13, 2017.

## III. Standard of Review

## A.    *Review of the Magistrate Judge's Report and Recommendation*

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[56] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[57] A district court's review is limited to plain error of parts of the report which are not properly objected to.[58]

---

[53] *Id*. (citing Adm. Rec. at 300).

[54] *Id*.

[55] *Id*. at 8–9.

[56] FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[57] *Id.*

[58] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

**B.       Standard of Review of Commissioner's Final Decision**

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[59] Appellate review of the Commissioner's denial of benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[60] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[61] The Court must review the whole record to determine if such evidence exists.[62] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[63] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[64] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the

---

[59] 42 U.S.C. § 405(g).

[60] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[61] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[62] *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986).

[63] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[64] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[65]

## IV. Law and Analysis

### A.    *Applicable Law to Qualification for Benefits*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[66] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[67] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[68] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[69]

In the instant case, the ALJ concluded that Plaintiff has the following medically determinable impairments: "affective disorder, bereavement disorder, anxiety disorder, and knee

---

[65] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[66] 42 U.S.C. § 423(d)(1)(A).

[67] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[68] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[69] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

pain."[70] The ALJ held that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for 12 consecutive months.[71]   Therefore, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments.[72] Accordingly, the ALJ determined that Plaintiff was not under a disability from October 4, 2012, through the date of the decision.[73] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[74]

**B.    *The ALJ's Determination that Plaintiff's Mental Conditions Were Not Severe***

The Magistrate Judge found that the ALJ's decision that Plaintiff's mental impairments were not severe was based on substantial evidence.[75] Plaintiff objects to this determination, arguing that the Magistrate Judge erred in affirming the ALJ's finding that her major depressive disorder, panic disorder, and adjustment disorder were not severe impairments.[76] Accordingly, the Court reviews this issue *de novo*.

"A non-severe impairment under the Social Security regulations is one that 'does not significantly limit [the claimant's] physical or mental ability to do basic work activities.'"[77] If the claimant does not have a severe medically determinable physical or mental impairment, or

---

[70] Adm. Rec. at 30.

[71] *Id.*

[72] *Id.*

[73] *Id.* at 36.

[74] *See  Perez*, 415 F.3d at 461

[75] Rec. Doc. 20 at 9.

[76] Rec. Doc. 25-1 at 6.

[77] *Giles v. Astrue*, 433 F. App'x 241, 245–46 (5th Cir. 2011) (quoting 20 C.F.R. § 404.1521).

12

combination of impairments, that has lasted or is expected to last for a continuous period of at least 12 months, the Commissioner will find that the claimant is not disabled.[78]

In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional restrictions are present ("paragraph B" criteria).[79] "The required level of severity for listing 12.04 is met when the requirements in both subsections A and B are satisfied."[80] "Subsection B requires the claimant to show that his activities have been impaired in at least two of four areas."[81] These four areas are:

1. Marked restriction in activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).[82]

Even if a claimant's mental impairment does not meet the criteria specified in the listings, he must be found disabled if his condition "is equal to" a listed impairment.[83] In determining

---

[78] 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

[79] 20 C.F.R. § 404.1520a.

[80] *Stephens v. Barnhart*, 174 F. App'x 232, 233 (5th Cir. 2006) (quoting *Boyd v. Apfel*, 239 F.3d 698, 703 n.8 (5th Cir. 2001)).

[81] *Id.*

[82] 20 C.F.R. § 404, Subpt. P., App. 1, § 12.04(B).

[83] 20 C.F.R. § 404.1520(d).

whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether her "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria."[84]

Here, in reaching her conclusion that Plaintiff's mental impairments were not severe, the ALJ reviewed Plaintiff's hearing testimony and the medical evidence.[85] The ALJ noted that Plaintiff alleged that depression, anxiety, stress, and grief due to the death of her 15-year-old adopted son (her grandchild) on October 4, 2012, prevented her from working.[86] The ALJ stated that Plaintiff began attending weekly grief counseling on October 24, 2012.[87] The ALJ also noted that Plaintiff was assessed by a licensed clinical social worker at the Jefferson Parish Human Service Authority—East Jefferson Mental Health Center on November 19, 2012.[88] The ALJ recalled that Plaintiff had reported decreased sleep and appetite, increased irritability, panic attacks, rapid mood swings, racing thoughts, crying spells, apathy, poor memory, and feelings of hopelessness.[89]

The ALJ reviewed the record of a February 18, 2013 psychiatric evaluation by Marianne Call, APRN, at the Jefferson Parish Human Service Authority—East Jefferson Mental Health

---

[84] 20 C.F.R. § 404.1529(d)(3).

[85] Adm. Rec. at 31–35.

[86] *Id*. at 31.

[87] *Id*. at 32.

[88] *Id*.

[89] *Id*.

Center.[90] The medical record reflected that Plaintiff complained of poor sleep, decreased appetite, crying spells, feeling dazed at times, anhedonia, isolation, and panic attacks that lasted for several minutes.[91] The ALJ noted that Ms. Call diagnosed Plaintiff with major depressive disorder recurrent moderate and panic disorder without agoraphobia.[92] The ALJ also noted that on February 18, 2013, Ms. Call prescribed Lexapro and Hydroxyzine to Plaintiff.[93] On July 17, 2013, Plaintiff reported increased symptoms of depression after she ran out of medication, and Ms. Call restarted Plaintiff on Lexapro and Hydroxyzine.[94]

The ALJ reviewed medical notes from Plaintiff's group psychotherapy sessions.[95] During a February 7, 2013 session, it was reported that, though sad, Plaintiff was feeling better and was responding positively to the session.[96] During a March 7, 2013 session, Plaintiff's affect was much brighter and lighter, and during a March 14, 2013 session, Plaintiff could see a difference in her mood after starting medication.[97] Finally, during a March 14, 2013 session, Plaintiff reported decreased panic attacks due to medication and group sessions.[98]

---

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.* at 33.

[95] *Id.* at 32.

[96] *Id.*

[97] *Id.*

[98] *Id.*

The ALJ also reviewed medical notes from Plaintiff's individual therapy sessions.[99] During an April 22, 2013 session, Plaintiff's mental status was within normal limits except for an anxious attitude, sad mood, scattered speech, and a rational but somewhat tangential thought process.[100] During a May 24, 2013 session, Plaintiff reported that she was sleeping more, eating more, and was able to think about her son without crying.[101] During a June 7, 2013 session, Plaintiff stated that she was able to find some peace and was trying to look at her new life with joy.[102] Finally, during a June 21, 2013 session, Plaintiff reported that her medications were working despite some minor incidents of panic.[103]

The ALJ reviewed the medical records of a consultative examination performed by Dr. William Fowler on February 22, 2013.[104] Dr. Fowler found that Plaintiff's thought process was logical, coherent, and goal directed, but he found her mood to be depressed.[105] Dr. Fowler diagnosed Plaintiff with adjustment disorder with mixed emotional features.[106] Dr. Fowler opined that Plaintiff could understand simple instructions but that her persistence was limited, her pace was slowed, her social interactions were diminished, her motivation was diminished, she seemed

---

[99] *Id.* at 32–33.

[100] *Id.* at 32.

[101] *Id.* at 32–33.

[102] *Id.* at 33.

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.*

more comfortable alone or in small groups, and she lacked initiative and energy.[107] Dr. Fowler concluded that it would be difficult for Plaintiff to function for extended periods of time based on her current condition.[108]

In considering what limitations, if any, would result from Plaintiff's mental impairments, the ALJ found no more than mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence, or pace, and no episodes of decompensation.[109] The ALJ noted that in Plaintiff's testimony she reported that she had no problems attending to her personal care, needed no reminders to take care of her personal needs, and she was able to prepare meals, perform housework, go out alone, walk outside, use public transportation, shop for food and household items, and handle money.[110] Although Dr. Fowler noted several limitations to Plaintiff's functioning, the ALJ noted that the treatment records from Jefferson Parish Human Service Authority—East Jefferson Mental Health Center reflected significantly improved symptoms after the initiation of medication.[111] Accordingly, because Plaintiff's "medically determinable mental impairments caused no more than 'mild' limitation in any of the first three functioning areas and 'no' episodes of decompensation which have been of extended duration in the fourth area," the ALJ concluded that the conditions were not severe.[112]

---

[107] *Id.*

[108] *Id.*

[109] *Id.* at 34.

[110] *Id.*

[111] *Id.*

[112] *Id.* at 35 (citing 20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1)).

The ALJ noted that no treating health care provider had placed any specific restrictions or limitations on Plaintiff.[113] The ALJ accorded some weight to the assessment by Dr. Fowler, the consultative examiner, but found his diagnosis of adjustment disorder was not consistent with Plaintiff's symptoms.[114] The ALJ stated that she agreed with the conclusions of the non-examining state agency psychologist dated September 3, 2013, that Plaintiff's affective disorder and anxiety disorder were non-severe.[115] The ALJ accorded little weight to a July 22, 2013 determination by a non-examining state agency psychologist that concluded that Plaintiff's affective disorder was severe because it was outweighed by the September 3, 2013 evaluation, which was based on new treatment records.[116]

Plaintiff notes that she reported crying spells, decreased sleep, fatigue, hopelessness, rapid mood swings, panic attacks, racing thoughts, anhedonia, isolating behavior, decreased appetite, and decreased energy following the death of her adopted son.[117] Based on these symptoms, Plaintiff asserts that it would be reasonable to conclude that she suffers intense, persistent, and functionally limiting effects, including difficulties concentrating and participating in attention demanding low-stress tasks.[118] Plaintiff contends that this conclusion is supported by the opinion

---

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.*

[117] Rec. Doc. 25-1 at 7 (citing Adm. Rec. at 296–99, 312, 377, 393, 398, 402).

[118] *Id.*

of the consultative examiner, Dr. Fowler.[119] Therefore, Plaintiff submits that the combination of her impairments would impose more than a minimal impact on her ability to engage in, and maintain, routine competitive employment.[120] Plaintiff acknowledges that she reported some improvement in her mental conditions with treatment.[121] However, she asserts that the record reflects numerous instances where she reported ongoing symptoms and limitations as a result of her impairments.[122]

The Fifth Circuit has held that "[a]n ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record."[123] Credibility determinations are generally entitled to great deference.[124] Plaintiff started taking medication on February 20, 2013, two days before the examination by Dr. Fowler.[125] Although there are instances in the medical records that show Plaintiff was reporting ongoing symptoms,[126] the medical evidence supports the ALJ's conclusion that Plaintiff's ability to function improved with medication and therapy.[127] Plaintiff argues that the ALJ should have reached the opposite

---

[119] *Id*. (citing Adm. Rec. at 300).

[120] *Id*.

[121] *Id*. at 8.

[122] *Id*. (citing Adm. Rec. at 312, 330, 342, 349, 353, 356, 358, 368, 370, 377, 393, 459).

[123] *Foster v. Astrue*, 277 F. App'x 462, 465 (5th Cir. 2008) (citing *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985)).

[124] *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

[125] Adm. Rec. at 298.

[126] *Id*. at 312, 330, 342, 349, 353, 356, 358, 368, 370, 377, 393, 459.

[127] *Id*. at 113, 312–13, 362–64, 374, 428–29, 436, 438, 447, 454, 456.

conclusion in evaluating her medical records, but she does not point to any evidence that the ALJ failed to evaluate. This Court cannot reweigh the evidence in the record or substitute its judgment for the ALJ's.[128] Accordingly, the Court concludes that the ALJ's decision that Plaintiff's mental impairments were not severe was based on substantial evidence.

## C.      *Portions of the Report and Recommendation that Were Not Objected To*

Plaintiff does not object to the Magistrate Judge's finding that the ALJ's RFC determination was based upon substantial evidence.[129] The Magistrate Judge concluded that the ALJ properly considered the totality of the medicals, which showed that by September 2013, Plaintiff reported that her symptoms had improved, and that the ALJ correctly concluded that Dr. Fowler's opinions were inconsistent with Plaintiff's treatment records.[130] Reviewing this determination for plain error, and finding none, the Court adopts the Magistrate Judge's conclusion that the ALJ's RFC determination was based upon substantial evidence.[131]

Finally, the Magistrate Judge addressed Plaintiff's argument that the ALJ failed to present demonstrable evidence of other work in significant numbers in the national economy given Plaintiff's RFC.[132] Because the ALJ properly determined that Plaintiff was not disabled at Step 2, the Magistrate Judge concluded that the ALJ was not required to reach Step 5 and consider the

---

[128] *Newton*, 209 F.3d at 452.

[129] Rec. Doc. 20 at 11.

[130] *Id*.

[131] *Id*.

[132] *Id*. at 12.

number of jobs available in the national economy.[133] Plaintiff does not object to this determination. "A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the [ALJ's] analysis."[134] Accordingly, the Court adopts the Magistrate Judge's determination that the ALJ was not required to reach Step 5.

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination that Plaintiff's mental impairments were not severe was based on substantial evidence. The Court also adopts the Magistrate Judge's conclusion that the ALJ's RFC determination was based upon substantial evidence, and the Magistrate Judge's determination that the ALJ was not required to reach Step 5. Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's objections, and **ADOPTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** that the ALJ's decision denying Dafney Davis' claim for Disability Insurance Benefits, Disabled Widow's Benefits and Supplemental Security Income Benefits be **AFFIRMED.**

**NEW ORLEANS, LOUISIANA,** this ___21st___ day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[133] *Id.* at 13.

[134] *Alexander v. Astrue*, 412 F. App'x 719, 721 (5th Cir. 2011).

21